In The Interest of: S. C., M. C., D. C.,

B. C., B. C., R. C., G. C., J. A. C.,

A. R. C., D. E. C.

(No. 15200)

Decided December 3, 1981.

*Smith & Rumora and Robert D. Calfee* for appellant.

*Jane Moran* for father.

*Paul E. Pinson* for children.

*Chauncey H. Browning*, Attorney General, *and Billie Gray*, Assistant Attorney General, for State.

MCHUGH, JUSTICE:

This is an appeal by Rebecca C. from an order of the Circuit Court of Mingo County, entered on July 11, 1980, which granted permanent custody and guardianship of eight of the appellant's ten children to the West Virginia State Department of Welfare and terminated the appellant's parental rights.[1] On this appeal Rebecca C. assigns three errors: (1) that she was denied her right under W. Va. Code, 49-6-2 [1980], to cross-examination of the witnesses who appeared in opposition to her; (2) that the trial judge improperly shifted the burden of proof from the State Department of Welfare to the appellant, and that the State failed to meet its burden; and (3) that the trial judge erred by failing to make findings of fact and conclusions of law in his final order as required by W. Va. Code, 49-6-2(c) [1980]. The assignments of error will be considered in order.

I

On September 5, 1979, the West Virginia State Department of Welfare filed a petition with the Circuit Court of Mingo County alleging that the children of the appellant

---

[1] James C., the father of the children, did not appeal from the judgment of the circuit court. Two of the children were not included in the order granting permanent custody and guardianship to the State Department of Welfare. D. E. C. and J. A. C. remain in the custody of their father. The appellant and James C. are now divorced.

were neglected children within the meaning of W. Va. Code, 49-1-3 [1978].[2] Included as part of the petition were reports made by social workers Lewis Childers and Marcia Corbett. At a hearing on July 2, 1980, the State Department of Welfare did not call either Lewis Childers or Marcia Corbett to testify, nor did the State Department of Welfare offer their reports as evidence. The appellant assigns this as error.

The appellant's argument is based on W. Va. Code, 49-6-2(c) [1980], which provides:

> In any proceeding under this article, the party or parties having custody of the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

---

[2] W. Va. Code, 49-1-3 [1978], provides, in part:

" 'Neglected child' means a child: (1) Whose physical or mental condition is impaired or endangered as a result of the present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education and the condition is not due primarily to the lack of financial means of the parent, guardian or custodian; or (2) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian."

The appellant argues that the language of this section requires the State Department of Welfare to call the social workers who prepared the reports which were incorporated into the petition and to offer those reports into evidence. She further argues that the State's failure to call the social workers and to offer their reports into evidence denied her the right to cross-examination provided for in the statute. We find no merit in this argument.

W. Va. Code, 49-6-2(c) [1980], requires the State Department of Welfare, in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition * * * by clear and convincing proof." The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden. Specifically, there is no statutory requirement that the State Department of Welfare call any or all of the social workers who may have been involved in the case or to offer their reports into evidence. In this case the State Department of Welfare elected to attempt to meet its burden without relying on social workers Childers and Corbett or their reports. The State Department of Welfare, instead, chose to rely on the testimony of three of the chidren and social worker Kerry Burmeister.

Similarly, the State Department of Welfare's decision not to call social workers Childers and Corbett, or to offer their reports into evidence, did not violate the appellant's statutory right to cross-examine witnesses. The statute merely provides that there be an "opportunity ... to cross-examine witnesses." In this case the appellant was afforded, and exercised, her opportunity to cross-examine each witness presented by the State.

## II

An adjudicatory hearing was held on the neglect petition in this case on July 2, 1980. At that hearing the State Department of Welfare offered testimony by social worker Kerry Burmeister, and three of the appellant's children. At the close of the State's case, counsel for Rebecca C.,

relying principally on the fact that social workers Childers and Corbett had not been called to testify, moved to dismiss the petition. In overruling the motion, the trial judge said:

> "The gist of this action is neglect, and I think there is sufficient evidence as to what the living conditions were and it has been established by the evidence that the living conditions were such that it could be concluded that the children or that the parents had neglected to give the children proper surroundings, proper environment, in which to grow up. I think the State has sustain *[sic]* the burden of proof in that connection, and that when the stipulation was entered into on a former occasion that Mrs. C. be given an improvement period, I construe that to be an admission by all—not an admission—a concurrence by all parties that the living conditions of the children were not satisfactory and that stipulation amounted to a tacit agreement that conditions were not what they should have been, but that the parties would permit an improvement period. There has been no evidence that the conditions have improved, and for that reason, I think the State has sustained its case."

The appellant argues that the trial judge's comment, "that the stipulation amounted to a tacit agreement that conditions were not what they should have been," indicates that the trial judge had improperly shifted the burden of proof to the appellant.

The appellant, citing *Pierce v. Pierce*, ___ W. Va. ___, 274 S.E.2d 514 (1981), correctly points out that this Court will reverse a lower court judgment if it appears that such judgment was based on an incorrect conclusion of law. In a child abuse or neglect case the burden of proof under W. Va. Code, 49-6-2 [1980], is upon the State Department of Welfare to show by clear and convincing proof that conditions existing at the time of the filing of the petition constituted neglect or abuse. That burden does not shift.

The question here, however, is whether the trial judge did misinterpret the law and improperly shift the burden of proof on the issue of neglect to the appellant. The statement of the trial judge cited by the appellant must be taken in context. Prior to the taking of the children's testimony at the July 2, 1980, hearing, for example, the following exchange occurred:

> Mr. Calfee [Counsel for Rebecca C.]: I don't have any objection to the testimony that pertains to the conditions prior to the removal of the children, because our concern here is what has happened in the improvement period more than what happened prior to the removal. If the State wants to take a life history of these children in their home, that is fine, but I don't see what real purpose that is going to serve.

> Mr. Pinson [Counsel for the children]: Our purpose is to check into what the conditions were at the time of the filing of the petition and what the situation is now at the date of the hearing.

> The Court: I think the Court at the time it put this parent upon an improvement period decided, in effect, that the living conditions were unsatisfactory in the past and the question now is whether there has been any improvement, and I have not made a final disposition of the custody and I don't really believe this court needs testimony in detail about living conditions, other than the manner in which it might pertain to any improvement, since the parents were put on an improvement period. * * * Is it stipulated that the living conditions were unsatisfactory?

> Miss Moran [Counsel for James C.]: No, Your Honor.

> Mr. Calfee: No, Your Honor. * * *

> The Court: Alright. We will have to go into this matter in abonitio [sic]. * * * We will go into it thoroughly from the beginning and let there be testimony as to the unsatisfactory conditions in the home prior to any order as to an improvement

period or custody in the hands of the welfare department. So, we will proceed.

The trial judge, upon learning that the parties did not stipulate to the conditions existing at the time of filing of the petition, ordered that the State Department of Welfare go forward with its evidence of neglect existing at the time of the filing of the petition.

The trial judge's statement regarding the "tacit agreement" must also be viewed in the context of the whole statement in which it appears. Specifically, the trial judge said: "I think there is sufficient evidence. * * * I think the State has sustain *[sic]* the burden of proof in that connection. * * *" The stipulation statement seems, when viewed in context, to be an afterthought—a statement of further supportive evidence—not an indication that the trial judge placed the burden of proof upon the appellant.

In the context of the entire record here, including the trial judge's specific finding that the State had presented sufficient evidence to sustain its burden, we do not think that it can be said that the trial judge misconstrued or misapplied the law. The trial judge, in this case did not give undue weight to the evidence concerning the improvement period, nor did he improperly shift the burden of proof. We do, however, take this opportunity to emphasize that, even when an improvement period is granted, the burden of proof in a child neglect or abuse case does not shift from the State Department of Welfare to the parent, guardian or custodian of the child. It remains upon the State Department of Welfare throughout the proceedings.

The appellant next argues that, even if the burden of proof was not improperly shifted, there was not sufficient evidence to show neglect and the State Department of Welfare, therefore, failed to carry its burden. In making this assertion the appellant mainly argues that the State Department of Welfare's proof was insufficient because social workers Childers and Corbett were not called to testify and their reports were not introduced into evidence. As we discussed in Section I above, the State Department of Welfare was not under an obligation to

present such evidence or testimony, and the failure to do so is not, standing alone, a basis for finding that the evidence was insufficient. The proper question is whether the evidence which the State Department of Welfare did present was clear and convincing proof of neglect existing at the time the petition was filed. We have reviewed the record in this case and we think that the evidence was sufficient to support such a finding.

### III

W. Va. Code, 49-6-2(c) [1980], specifically provides that the court shall "make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court." The disposition order in this case merely states: "Following a full hearing, and after mature consideration of said evidence and argument of counsel, the Court found that each of said children were neglected children as defined by West Virginia Code, 49-1-3, as amended. * * *" The trial judge, at the close of the July 2, 1980, hearing, did state:

> The court * * * makes the following findings: that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and it is necessary for the welfare of the children to terminate the parental or custodial rights and responsibilities, and the Court commits the children to the permanent guardianship of the West Virginia Department of Welfare. * * *

We agree with the appellant that this bare statement couched in the language of W. Va. Code, 49-6-5(a) (6) [1977], is not sufficient to comply with the requirement of W. Va. Code, 49-6-2(c) [1980], even though the evidence did support a finding of neglect. The State, however, argues that the error was waived and we find merit in that argument.

In *Loar v. Massey*, ____ W. Va. ____, 261 S.E.2d 83 (1979), we held, at Syl. pt. 1: "An order to which no objection was made and which was actually approved by counsel, will not be reviewed on appeal." The record in this case shows that no objection was ever made to the trial judge's failure to make specific findings of fact and conclusions of law.

This issue is raised for the first time in the appellant's petition for appeal. In addition, the order which should have contained such findings of fact and conclusions of law was acquiesced in and signed by the appellant's counsel. In this case no objection was made to the order and it was approved for entry by counsel. In this situation we will consider the error to be waived. A litigant may not silently acquiesce to error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.

For the above stated reasons, the judgment of the Circuit Court of Mingo County is affirmed.

*Affirmed.*