376 S.E.2d 309

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES, Appellee,**

v.

**TAMMY B., Appellant.**

**No. 18217.**

Supreme Court of Appeals of West Virginia.

Dec. 14, 1988.

---

J. David Judy, III, for appellant.

Karen L. Garrett, Moorefield, guardian ad litem for children.

Charles G. Brown, III, Atty. Gen., for W.Va. Dept. of Human Services.

PER CURIAM:

Tammy B. is the natural mother of three infant children: Cynthia D. ("Cindy"), born out of wedlock on September 10, 1979, William B., Jr. ("Willie") born to the union of Tammy B. and William B., Sr. on July 14, 1980 and Paul L., born on April 21, 1985 during the marriage of Tammy B. and William B., Sr. but with Roger L. named as father.[1] As a result of a child abuse and neglect proceeding, Tammy B.'s parental rights were terminated.[2] On appeal to this Court, Tammy B. argues that she failed to receive personal notice of the hearing on the removal petition, the judgment is not supported by the evidence, the trial court failed to allow a meaningful improvement period, and the trial court failed to adopt the least restrictive alternative.

Throughout the proceedings below, Tammy B. lived with Roger L., although she was married to William B., Sr. Between October 21, 1983 and March 20, 1984, the Department of Human Services investigated four separate incidents of domestic violence between Tammy B. and Roger L. Two of these instances of domestic violence resulted in injury to Cindy. On November 4, 1983 Cindy was cut by flying glass and on March 20, 1984, Cindy was struck in the

---

1. We follow our past practice in juvenile and domestic relations cases that involve sensitive facts by not using the last names of the parties. *See e.g. State ex rel. Dept. of Human Services v. Cheryl M.,* 177 W.Va. 688 n. 1, 356 S.E.2d 181 n. 1 (1987); *West Virginia Dept. of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985); *State v. Ellsworth,* 175 W.Va. 64 n. 1, 331 S.E.2d 503 n. 1 (1985).

2. Although the same proceeding terminated the parental rights of David W., the alleged father of Cindy, and the parental rights of Roger L., neither have appealed to this Court. The parental rights of William B., Sr. were not terminated and Willie was placed in the temporary custody of the Department of Human Services.

face with a shovel by Roger L.[3] During this period, DHS received other reports that the children were left unattended or taken to bars late at night.

On July 26, 1985 Sandra Jones, a case worker for DHS, investigating a report that Roger L. had choked Willie, found Willie had stitches in his head. Both Tammy B. and Roger L. denied that Willie had been choked and said that Willie had fallen from a swing.

On August 6, 1985, Tammy B. reported to DHS that Roger L. threw her through a door and she had left him. DHS offered her protective services which were refused. Shortly thereafter, Tammy B. returned with her children to Roger L. On August 26, 1985, DHS received another report of domestic violence which Tammy B. denied.

At 3:00 a.m. on October 11, 1985, Tammy B. called the state police and requested help to leave Roger L. The state police drove Tammy B. and the children to the home of Tammy's mother. Tammy B. refused to file charges and called Mrs. B., Willie's grandmother, to pick up Willie and Cindy. When Mrs. B. arrived to get the children, Tammy B. and the children had already returned to Roger L.

Because of the ongoing nature of the endangerment to the children, on October 21, 1985, DHS filed a petition with the Circuit Court of Hardy County charging Tammy B. with abuse and neglect of the infant children. A hearing was scheduled for November 7, 1985 on the petition and Tammy B. was personally served. The hearing was rescheduled for November 19, 1985 and Tammy B. was notified by mail.

On November 19, 1985 although Tammy B. did not appear, the trial court heard testimony and found that the children, then 5 and 6 years old, were engaging in inappropriate sexual activity, and that the domestic violence affected the children sufficiently adversely to warrant their immediate removal. The children were removed immediately and placed in the physical and legal custody of DHS. Cindy and Willie were placed with Willie's grandmother, Mrs. B., and the infant, Paul L., was placed in foster care.

On November 21, 1985, counsel for Tammy B. filed a petition to reopen the hearing and various motions, including a motion to disqualify the Honorable John M. Hamilton which was ultimately rejected by this Court by letter opinion dated December 19, 1985.

After the removal, Tammy B. began to work with DHS and a service plan was composed in early January 1986, signed by counsel for Tammy B. on January 16, 1986 and signed by Tammy B. on February 4, 1986. The family case plan was revised and signed on April 30, 1986. Between January 1986 and July 10, 1986, numerous visits were arranged between the children and Tammy B. Tammy B. completed DHS's parenting skills class, had a psychological evaluation and attended counseling on the basic causes of abuse and neglect. On July 8, 1986 the counselor, Dr. Bailey, recommended family counseling and requested the children be returned home to facilitate counseling. The circuit court ordered the return of the two children to facilitate family counseling pursuant to the family service plan and to avoid having Cindy change schools. Two children were returned; Paul L., on July 10, 1986 and Cindy, on August 25, 1986. Willie remained with his grandmother and legal custody of all the children remained with DHS.

Problems developed immediately. Although DHS explained to Tammy B. the school's requirement of a "tine test" and had offered to provide transportation, Cindy did not attend the first few days of school because she lacked the test. About 10:30 p.m. on September 8, 1986, Tammy B. took both children to the parking lot of the Friendly Tavern looking for Roger L. When a woman who Tammy B. thought had been with Roger L. emerged from the tavern, a violent disagreement ensued between the women. Both Cindy and Paul were left alone in the car and watched the

---

**3.** A deputy sheriff testified about the November 4, 1983 incident and a state trooper testified about the March 20, 1984 incident.

fight. As a result Tammy B. left Roger L. but shortly thereafter, she began to help him clean a trailer during the day.

On September 29, 1986, "Squirrel" S., an acquaintance of Roger L., entered the trailer when no one was home and passed out on the floor. When Tammy B., Roger L. and the children entered the trailer, they found Squirrel and, because they could not awaken him, they left him in the trailer and went outside to clean up the yard. Later, as dinner was being served, two DHS workers accompanied by a deputy sheriff, arrived. Just then Squirrel appeared from the back of the trailer and asked for a beer. After a brief disturbance, DHS removed both children. After a hearing held on January 15 and 16, 1987 the circuit court ordered the termination Tammy B.'s parental rights.

## I

■ Because of the constitutional protections surrounding the right of a natural parent to the custody of her infant children, notice of the petition and hearing to terminate those rights is required. In our recent examination of parental rights, we stated in Syllabus Point 1, *In Interest of Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988):

> In the law concerning custody of minor children, no rule is more firmly established than the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions. Syllabus Point 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

*W.Va.Code,* 49–6–1(b) [1977] indicates that personal service of the termination petition and notice of the hearing is preferred but not required.[4]

4. *W.Va.Code,* 49–6–1(b) [1977] states in pertinent part:
 The petition and notice of the hearing shall be served upon both parents and any other custodian, giving to such parents or custodian at least ten days' notice, and notice shall be given to the state department. In case where-

■ In the present case Tammy B. was personally served on October 22, 1985 with a copy of the petition and a notice of hearing scheduled for 9:00 a.m. November 7, 1985. The hearing was continued to 1:00 p.m. November 19, 1985 and an amended notice of hearing was sent by first class mail to Tammy B. On appeal Tammy B. contends that she did not receive the amended notice and, therefore, the circuit court had no right to conduct a hearing in her absence.

Even though Tammy B. did not receive the amended notice of hearing, the personal service of the petition and original notice of hearing meets both due process and statutory notice requirements. If Tammy B. had appeared or even inquired on November 7, 1985, the original hearing date, she would have been informed of the continuance. We find that the personal service of the petition and notice of original hearing to Tammy B. meets both due process and statutory notice requirements.

## II

*W.Va.Code,* 49–6–2(c) [1984] requires that in a child abuse or neglect case, the Department of Human Services is to prove that the "conditions existing at the time of the filing of the petition ... by clear and convincing proof." In Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981), we stated:

> *W.Va.Code,* 49–6–2(c) [1980], requires the State Department of Welfare, in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition ... by clear and convincing proof." The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden.

in personal service within West Virginia cannot be obtained after due diligence upon any parent or other custodian, a copy of the petition and notice of the hearing shall be mailed to such person by certified mail, addressee only, return receipt requested, to the last known address of such person.

The burden of proof remains with DHS through any improvement period. In Syllabus Point 2, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981), we stated:

Even when an improvement period is granted, the burden of proof in a child neglect or abuse case does not shift from the State Department of Welfare to the parent, guardian or custodian of the child. It remains upon the State Department of Welfare throughout the proceedings.

■ In the present case, DHS presented evidence of child abuse and neglect in the November 19, 1985 hearing through a report dated September 25, 1985 and testimony from law enforcement officers who had investigated the incidents of domestic violence, Mrs. B., Willie's grandmother, and Sandra Jones, a child protective services worker. The testimony was subject to cross-examination by the guardian ad litem for the children. We find that the court's finding of November 19, 1985 that the children were abused and that an immediate danger was present to their safety and welfare was supported by clear and convincing proof.

■ The court order terminating Tammy B.'s parental rights was based on Tammy B.'s failure to continue to implement the family service plan after the two children were returned. The record indicates that Cindy missed school, and that Cindy and Paul were left unattended in a tavern parking lot at 10:30 p.m., witnessed a fight between their mother and another woman, were left with inappropriate babysitters, were exposed to drunkenness with the seeming approval of their mother, and continued to experience domestic violence and instability. Counseling on substance abuse stopped and Tammy B. did not conscientiously attend family counseling, even though counseling was the reason for the children's return.[5] We find that the decision of the circuit court permanently to terminate the parental rights of Tammy B. because she failed to act as a responsible parent for an appreciable period is supported by clear and convincing proof.

### III

■ Parental rights are protected by the statutory requirement that, in the absence of compelling circumstances to justify a denial, the circuit court, if requested, must allowed a parent an improvement period.[6] In Syllabus Point 2, *State ex rel. Dept. of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987), we stated:

W.Va.Code, 49–6–2(b) (1984), permits a parent to move the court for an improvement period which shall be allowed unless the court finds compelling circumstances to justify a denial.

An improvement period can be granted to a parent without custody of her children in order to provide the parent with an opportunity to overcome the perceived problems. In Syllabus Point 2, *In Interest of Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988), we stated:

W.Va.Code, 49–6–2(b) (1984), allows a parental improvement period, while the child is temporarily physically removed from the alleged abusive situation, as the court may require temporary custody in

---

5. The record indicates that in the approximate one month period when both children were in the home, Tammy B. kept two of the weekly family counseling appointments. Tammy B. saw Dr. Bailey on October 1 and 21, 1986, but Dr. Bailey discontinued the sessions because Tammy B. did not attempt to deal with her own problems. Although encouraged by DHS to seek counseling, Tammy B. had no other counseling. The substance abuse counseling was discontinued in July 1986.

6. *W.Va.Code*, 49–6–2(b) [1984] provides:
In any proceeding under this article, the parents or custodians may, prior to final hearing, move to be allowed an improvement period of three to twelve months in order to remedy the circumstances or alleged circumstances upon which the proceeding is based. The court shall allow one such improvement period unless it finds compelling circumstances to justify a denial thereof, but may require temporary custody in the state department or other agency during the improvement period. An order granting such improvement period shall require the department to prepare and submit to the court a family case plan in accordance with the provisions of section three [§ 49–6D–3], article six-D of this chapter.

the state department or other agency during the improvement period. *See State v. Scritchfield,* 167 W.Va. 683, 280 S.E.2d 315 (1981).

When an improvement period is ordered, the Department of Human Services is required to prepare a family case plan. *Cheryl M., supra,* 177 W.Va. at 688, 356 S.E.2d at 181. *W.Va.Code,* 49–6D–3(a) [1984] requires the family problems be identified in an organized and realistic manner and that logical goals be set to resolve or lessen those problems.[7] *W.Va.Code,* 49–6D–3(b) [1984] provides that the plan should result from input by the parent, the child, if appropriate, counsel for the participants and DHS. The plan should be furnished to the court with thirty days after entry of the order referring the case to DHS. *Id.*

We recognized the purpose of the family case plan in Syllabus Point 5, *State ex rel. Dept. of Human Services v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987), when we stated:

> The purpose of the family case plan as set out in W.Va.Code, 49–6D–3(a) (1984), is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems.

█ In the present case Tammy B. contends that she was denied a meaningful improvement period. The record indicates that although Tammy B. did not request an improvement period, an improvement period was worked out between the parties on December 12, 1985. The improvement period began while the children were in the temporary custody of DHS. A family case plan was developed by early January 1986, signed by all parties, submitted to and approved by the court.[8] The family case plan substantially met requirements specified in *W.Va.Code,* 49–6D–3 [1984]. During the plan's first stage the focus of improvement plan was on parenting skills, counseling for substance abuse and reducing domestic violence in order to achieve the goal of returning the children. After the children were returned, the focus of the improvement plan was on family counseling. However, after the return of the two children, improvement under the plan stopped.[9] The improvement period granted to Tammy B. met the statutory requirements and clearly was an opportunity for Tammy B. to alleviate the perceived problems.

We find that Tammy B. had a meaningful improvement period with a family case plan and that during the improvement period Tammy B. failed to act as a responsible parent.

IV

Finally Tammy B. contends that the trial court failed to allow the least restrictive alternative regarding her rights as a natural parent. Tammy B.'s reliance on the

---

7. *W.Va.Code,* 49–6D–3(a) [1984] requires each family case plan to contain the following:

(1) A listing of specific, measurable, realistic goals to be achieved;
(2) An arrangement of goals into an order of priority;
(3) A listing of the problems that will be addressed by each goal;
(4) A specific description of how the assigned caseworker or caseworkers and the abusing parent, guardian or custodian will achieve each goal;
(5) A description of the departmental and community resources to be used in implementing the proposed actions and services;
(6) A list of the services which will be provided;
(7) Time targets for the achievement of goals or portions of goals;
(8) An assignment of tasks to the abusing or neglecting parent, guardian or custodian, to the caseworker or caseworkers, and to other participants in the planning process; and
(9) A designation of when and how often tasks will be performed.

8. The family service plan was filed with the circuit court on February 6, 1986. The delay in filing was caused by Tammy B.'s motion to disqualify the circuit court judge and because Tammy B. did not wish to sign the plan until her attorney had signed. The revised service plan of April 1986 and DHS's monthly reports were filed with the court.

9. *W.Va.Code,* 49–6–2(b) [1984] specifies that the improvement period last for three to twelve months. The actual improvement period for Tammy B. began in December 1985 although the court's adoption of the family case plan was not formally reflected until the July 10, 1986 order.

least restrictive preference prescribed in *W.Va.Code*, 49–6–5(a) [1984] is misplaced.

■ In Syllabus Point 1 of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) we held:

> As a general rule the least restrictive alternative regarding parental rights to custody of a child under *W.Va.Code*, 49–6–5 [1977] will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

*See also In Interest of Darla B.*, 175 W.Va. 137, 331 S.E.2d 868 (1985). In the present case the children were repeatedly exposed to violent domestic arguments, were cut by flying glass, were choked, and were hit on the head with a shovel. Further, the children were reported to have been exposed to sexual acts in the home with the result that the older children were engaging in inappropriate sexual activity. Cindy was reported to have been sexually abused or exploited by Roger L. and William B., Sr., each of whom denied the allegation.

Given this violent history the circuit court's order of November 19, 1985 gave preference to the least restrictive alternative when it placed the children in the temporary custody of DHS, attempted an improvement period and later even returned two of the children.

■ However, the return of the children coincided with Tammy B.'s failure to continue the behavior specified in the family case plan. In Syllabus Point 2, *In Re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980), we stated:

> Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected.

*W.Va.Code*, 49–6–5(b) [1984] describes six non-exclusive circumstances that demonstrate there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected. In the present case, the circuit court found two such circumstances: (1) Tammy B. refused to cooperate in developing a family case plan before the filing of the petition, (*W.Va.Code*, 49–6–5(b)(2) [1984]), and (2) Tammy B. did not follow through with reasonable rehabilitative efforts, (*W.Va.Code*, 49–6–5(b)(3) [1984]).[10]

We find that the circuit court's termination of the parental rights of Tammy B. was based upon clear and convincing proof that there was "no likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." *W.Va. Code*, 49–6–5(a) [1984].

■ In her appeal Tammy B. requests that she be given an improvement period with a family case plan directed at reuniting the family. Because Tammy B. has been given a meaningful improvement period, we find that this case presents "compelling circumstances to justify a denial" of an additional improvement period within the

---

10. *W.Va.Code*, 49–6–5(b)(2) [1984] provides:
(2) The abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control.
*W.Va.Code*, 49–6–5(b)(3) [1984] provides:
(3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

meaning of *W.Va.Code,* 49–6–2(b) [1984] and hereby affirm the decision of the circuit court.

AFFIRMED.