# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

January 12, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: A.S. & K.S.**

**No. 14-0800** (Morgan County 13-JA-28 & 14-JA-35)

## MEMORANDUM DECISION

Petitioner Mother, by counsel Benjamin M. Hiller, appeals the Circuit Court of Morgan County's July 29, 2014, order terminating her parental rights to A.S. and K.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem for the child, Margaret B. Gordon, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in ratifying emergency custody of K.S., in later adjudicating the child as neglected, in revoking her improvement period, and in terminating her parental rights to both children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2013, A.S. was diagnosed with failure to thrive.[1] After this diagnosis, the DHHR implemented a safety plan to assist the family on October 3, 2013. The plan provided the family with in-home services including parenting education and appropriate care for the child. The services also allowed for monitoring of the child to assess and assist with any developmental needs. However, petitioner failed to take the child for follow-up medical care against specific instructions from medical providers. The parents did not always feed the child during the night and sometimes watered down the child's formula or fed her water in place of formula. This was in spite of medical providers explicitly cautioning the parents about the importance of regular feeding. As such, the child continued to lose weight and weighed only nine pounds and six ounces on October 10, 2013, which was less than she weighed when diagnosed with failure to thrive the previous month. For these reasons, the DHHR removed A.S. from petitioner's care and obtained an order ratifying emergency custody.

On October 15, 2013, the DHHR filed an abuse and neglect petition against the parents. That same month, the parents waived their right to a preliminary hearing and their right to an

---

[1]Petitioner's husband, C.S., was not the A.S.'s biological father but signed an affidavit of paternity and assumed legal responsibility for the child. The unknown biological father's parental rights were later terminated for abandonment.

1

adjudicatory hearing within thirty days. Ultimately, petitioner filed an answer in January of 2014 and admitted to medical neglect. Following the adjudicatory hearing held the same day, the circuit court's order noted that petitioner amended her answer to include an admission to not feeding the child sufficiently. Petitioner also moved for a post-adjudicatory improvement period, which the circuit court granted without objection.

In a court report for a status hearing in February of 2014, the DHHR noted that the parents were evicted from their Housing and Urban Development residence and that C.S. had been arrested and incarcerated on charges of obstruction. The DHHR attempted to persuade petitioner to move into a shelter in Martinsburg, West Virginia so she could be closer to services and have a place to stay, explaining that it could provide petitioner a bus pass to meet her transportation needs, but petitioner declined this offer. That same month, the DHHR conducted a case plan review with members of the multidisciplinary team ("MDT"). The review noted that petitioner showed a lack of enthusiasm toward her daughter and no willingness to improve their bond. The review also noted that petitioner would rather stay in Paw Paw, West Virginia with friends while waiting for C.S. to be released from incarceration instead of live in a shelter, have a bus pass, get a job, and attend services.

The circuit court conducted a status hearing in April of 2014, at which time it was made aware of petitioner's proposed moved to Clarksburg, West Virginia. It was noted that the DHHR had concerns about petitioner's ability to visit the child and continue services if she moved. Moreover, it was noted that petitioner did not have a residence in Clarksburg. The circuit court cautioned petitioner that if she was not making progress by the next status hearing, her improvement period might be revoked. Later that month, petitioner and C.S. moved to Clarksburg and into the home of C.S.'s mother. C.S.'s mother had a prior substantiated Child Protective Services ("CPS") history that made her an inappropriate placement for the child, which was discussed with petitioner prior to her move. Petitioner's in-home parenting and life skills services were transferred to a worker in the new city, and the DHHR offered to transfer her counseling services as well. Petitioner declined this offer, stating that she would find services elsewhere, though she never provided evidence of receiving counseling after her move.

In May of 2014, petitioner gave birth to K.S. in Harrison County, West Virginia.[2] The DHHR then filed a petition for emergency custody of K.S., alleging that the same risks present in regard to A.S. remained and further alleging that petitioner had only three prenatal care visits during the course of this second pregnancy. The DHHR also filed an amended petition to include K.S. The circuit court granted the DHHR emergency custody and revoked petitioner's improvement period at the preliminary hearing in June of 2014. Thereafter, the circuit court adjudicated K.S. as neglected because of the parents' failure to progress with services and the fact that they "still [did] not understand their own responsibility leading to [A.S.'s] failure to thrive." Thereafter, the circuit court held a dispositional hearing in July of 2014. At the beginning of the hearing, C.S. voluntarily relinquished his parental rights. Despite having previously been instructed that she would have to separate from C.S. if his parental rights were terminated, petitioner testified that she intended to continue her relationship with him and reside in the same home despite his voluntary relinquishment. Ultimately, the circuit court terminated

---

[2]C.S. is the child's biological father.

petitioner's parental rights to both children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's ratification of emergency custody of K.S., in adjudicating that child as neglected, in revoking petitioner's improvement period, or in terminating her parental rights to both children.

First, the Court finds no error in the circuit court's ratification of emergency custody of K.S. or in its later adjudication of that child as neglected. Petitioner's argument on this point is based entirely on the fact that the DHHR took custody of the child at the hospital and that she never had custody of the child such that she could have been neglected. However, petitioner's argument is misguided, as the same issues that necessitated removal of A.S. persisted at the time K.S. was born. According to West Virginia Code § 49-6-3(c),

> [i]f a child . . . shall, in the presence of a child protective service worker, be in an emergency situation which constitutes an imminent danger to the physical well being of the child . . . , and if such worker has probable cause to believe that the child or children will suffer additional child abuse or neglect . . . , the worker may, prior to the filing of a petition, take the child or children into his or her custody without a court order[.]

West Virginia Code § 49-1-3(8)(C) defines "imminent danger" as "an emergency situation in which the welfare or the life of the child is threatened," and goes on to state that "[s]uch emergency situation exists when there is . . . reasonable cause to believe that" the child's health or life is threatened by several circumstances, including nutritional deprivation. As outlined above, petitioner's nutritional deprivation of A.S. was the basis for that child's removal. In ratifying the DHHR's emergency custody of K.S., the circuit court specifically found that K.S.'s health was threatened by petitioner's failure to progress in the improvement period such that she could care for a newborn. In fact, petitioner refused to take responsibility for A.S.'s

developmental issues at the second preliminary hearing, and stated that it was not her fault A.S. failed to thrive. More importantly, the circuit court found that K.S. could not be placed in petitioner's home because she lived with C.S.'s mother who had a prior substantiated CPS case. For these reasons, it is clear that imminent danger existed with regard to K.S. such that the DHHR appropriately obtained emergency custody of that child.

Petitioner also argues that the circuit court violated her due process rights during the preliminary hearing on the amended petition because it did not allow her to testify telephonically. The Court disagrees. According to the record, petitioner did not attend a status hearing on May 30, 2014, due to transportation issues. At that time, the circuit court cautioned petitioner that she was to attend future hearings in person. Despite this warning, petitioner failed to appear for the preliminary hearing approximately one week later and later admitted that she did not try to obtain transportation for the hearing until the night before. In support of her argument on this issue, petitioner cites to Rule 14 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which states that "[b]y agreement of the parties or motion filed in accord with Rule 17(c), the court may hear testimony by telephone or video conference call." However, it is undisputed that petitioner did not file a motion to testify via telephone and the record does not show that all parties agreed to this method of testimony. As such, the circuit court did not err in barring petitioner's testimony via telephone. Importantly, petitioner was represented by counsel at this hearing and, therefore, was not precluded from submitting evidence on her behalf or cross-examining witnesses. As such, the Court finds no violation of her due process rights in this regard.

As to the circuit court's adjudication of K.S. as neglected, the Court notes that

> "W.Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). Again, petitioner argues that the DHHR could not meet this burden because K.S. was removed from her care at the hospital before any actual abuse or neglect could have occurred. However, the Court finds no merit to this argument as substantial evidence was introduced regarding petitioner's neglect of K.S. West Virginia Code § 49-1-3(11)(A)(i) defines a neglected child as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food . . . ." The finding that K.S. was neglected was based upon petitioner's inability to properly care for the child and provide the child with a safe and suitable home, as she continued to reside with C.S.'s mother. More importantly, the circuit court also found that petitioner made no progress in her improvement period to correct the conditions that led to A.S.'s failure to thrive. As such, it was clear that the same issues of neglect that existed in regard to A.S. persisted and presented a threat to K.S.'s wellbeing. As such, we find no error in the circuit court adjudicating K.S. as neglected.

As to petitioner's argument that it was error to revoke her improvement period, the Court finds no error in this regard. According to West Virginia Code § 49-6-12(h), a circuit court "shall terminate any improvement period . . . when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." The record shows that the circuit court was presented with ample evidence that supported its finding that petitioner failed to fully participate in the terms of her improvement period. This included petitioner's failure to continue with individualized therapy despite an offer to transfer her treatment to Harrison County after her move, which petitioner declined. Petitioner further failed to provide evidence that she ever resumed therapy in Harrison County. While petitioner continued to attend parenting and life skills services after her move, petitioner's provider testified that she failed to make any progress. Finally, as noted above, petitioner failed to acknowledge her role in A.S.'s developmental issues, stating that it was not her fault the child failed to thrive during the hearing on her improvement period.

On appeal, petitioner argues that the DHHR failed to provide her transportation to visitation and that the circuit court relied upon her lack of visitation in revoking her improvement period. However, the Court finds no merit to this argument. It is clear that the DHHR provided petitioner with reasonable services, such as relocating her in-home service providers following petitioner's move to Harrison County. However, the DHHR was not required to provide petitioner with transportation to visitations with A.S. when petitioner willfully moved over three hours away from the child. This is especially true in light of the DHHR discussing with petitioner that such a substantial move would negatively impact its ability to provide her services, and its subsequent offer to obtain housing, transportation, and other services for her in Martinsburg, West Virginia. Moreover, petitioner's lack of visitation with A.S. was only one factor the circuit court considered in revoking her improvement period. As outlined above, the circuit court had substantial evidence upon which to revoke petitioner's improvement period in the absence of her lack of visitations with A.S. As such, we find no error in the circuit court revoking petitioner's improvement period.

As to petitioner's argument that the circuit court erred in terminating her parental rights to both children, the same evidence addressed above also supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a circumstance in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

In addition to petitioner's failure to improve in regard to properly parenting her children despite the DHHR's services, petitioner also failed to provide the children with a suitable home and

informed the circuit court she would continue to reside with her husband even though he voluntarily relinquished his parental rights. All of this evidence was sufficient for the circuit court to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's wellbeing. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon this finding.

For the foregoing reasons, we find no error in the decision of the circuit court and its July 29, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6