EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.C.**

**No. 22-574** (Kanawha County 20-JA-182)

**MEMORANDUM DECISION**

Petitioner Father T.B.[1] appeals from the Circuit Court of Kanawha County's June 10, 2022, order terminating his parental rights to D.C.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April of 2020, the DHHR filed a petition alleging that petitioner physically abused the child's mother. According to the petition, the mother disclosed that petitioner "frequently harasses her" and beat her "to the point that people couldn't recognize her." The mother also stated that petitioner "has been paying people to fight her." At the time the mother made these disclosures, she "had a black eye and numerous scratches on her face that would be consistent with a physical altercation." Finally, the petition noted that the mother recanted her disclosures about petitioner during the Child Protective Services ("CPS") investigation. Specifically, when CPS was attempting to identify a safety resource for the child, the mother was told that she could not use petitioner. At this point, the mother stated that she made false disclosures against petitioner in order to protect her boyfriend, and that it was her boyfriend who physically assaulted her, not petitioner. At the subsequent preliminary hearing, the court directed the DHHR to provide petitioner with multiple services, including parenting and adult life skills education, random drug screens, and domestic violence counseling. The court also ordered petitioner to submit to a psychological evaluation and paternity testing.

---

[1]Petitioner appears by counsel Joseph H. Spano Jr. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Joseph A. Curia III appears as the child's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

The case then underwent a series of continuances related to the paternity testing and petitioner's psychological evaluation. Petitioner's paternity of the child was confirmed in September of 2020. After receiving the results of petitioner's psychological evaluation, the DHHR filed an amended petition in December of 2020. The amended petition contained additional information regarding petitioner, such as his twelve-year incarceration in federal prison on drug charges.[3]

Following the filing of the amended petition, the matter underwent several additional delays, many of which are attributable to petitioner. This included the appointment of several different attorneys to represent petitioner and his filing of ethical complaints against the guardian ad litem and the psychologist who performed his first psychological evaluation, which the court determined had to be resolved before adjudication could occur. At some point, petitioner requested a second psychological evaluation. At a hearing in January of 2022, the DHHR moved for petitioner to complete a new psychological evaluation, asserting that this issue "was delaying permanency for the child . . . and such delays were not in the best interest of the child." No party, including petitioner, objected, and the court granted the motion. It is unclear from the record how many evaluations petitioner attended, but the record demonstrates that he refused to attend at least one.

At an adjudicatory hearing in April of 2022, petitioner moved to dismiss the proceedings against him, arguing that the petition contained no allegations that he abused or neglected the child. The court denied the motion, finding that the petition contained sufficient notice to petitioner of the allegations against him. The DHHR then presented testimony from a CPS worker who recounted the mother's extensive disclosures of petitioner's perpetration of domestic violence. According to the worker, the mother's "story didn't change until [the worker] was in the middle of removal [of the child from the home], until [the worker] told her that she needed another safety resource in order to continue her services or that [the worker would] have to remove the child." According to the worker, it was at this point that the mother "said that the [petitioner] was appropriate" while "desperately trying to keep [the worker] from removing her child." Petitioner then called a DHHR worker to inquire about whether any police records existed to confirm the allegations of domestic violence against petitioner, and the worker confirmed none existed. Finally, petitioner testified and denied physical violence, although he admitted to using inappropriate language during verbal engagements with the mother. Petitioner also admitted that he failed to attend one of his psychological evaluations because he did not "feel comfortable." The court noted, however, that it had ordered petitioner's attendance and that he did not follow that order.

Based on the evidence, the court found that the mother previously reported that petitioner threatened her and perpetrated domestic violence, only recanting those disclosures in the face of losing custody of the child. According to the court, the mother's "recanting [was] consistent with

---

[3]The circuit court later granted, in part, petitioner's motion to strike the report from this psychological evaluation. However, the court permitted petitioner's statements from this report to remain part of the record.

behaviors of victims of domestic violence." The court further found that although petitioner denied physical violence, he admitted to arguing with raised voices and foul language, "which creates an environment of domestic violence that can be just as emotionally distressing to a minor child as physical violence." The court went on to find that petitioner's denial of physical domestic violence lacked credibility, and further that petitioner "demonstrated an inability throughout these proceedings to manage his anger despite the benefit of previous anger management classes." Accordingly, the court adjudicated petitioner of abusing and neglecting the child.

As petitioner does not challenge the termination of his parental rights, it is sufficient to note that the court ordered that termination following a dispositional hearing in June of 2022.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner raises only one assignment of error before this Court, arguing that the circuit court erred in adjudicating him as an abusing parent upon insufficient evidence.[5] Petitioner presents several arguments in support of this lone assignment of error.

Turning first to his assertion that the evidence was lacking, we find no error. Petitioner's argument on this point turns, ultimately, on the circuit court's credibility determinations. Specifically, petitioner points to his testimony in which he denied that any physical violence occurred, and attempts to undermine the testimony from a CPS worker[6] concerning the mother's significant disclosures of extensive domestic violence by petitioner. What petitioner fails to recognize is that "[a] reviewing court cannot assess witness credibility through a record. The trier

---

[4]The mother's parental rights were also terminated. The permanency plan for the child is adoption in the current placement.

[5]As part of his sole assignment of error, petitioner also asserts that the court erred in denying his motion to dismiss. However, he fails to provide any substantive argument in support of this assertion, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, which requires that "[t]he brief must contain an argument clearly exhibiting the points of fact and law presented . . . and citing the authorities relied on." Accordingly, we decline to address this issue.

[6]Petitioner refers, in passing, to this witness's testimony as hearsay. However, petitioner points to no portion of the appendix record to show that he objected to this testimony on the basis of hearsay, and he provides no argument before this Court that the evidence was inadmissible. As such, we find that petitioner has waived this issue. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." (Citation omitted)).

3

of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, the court concluded that the mother's recantation of her disclosures was done for the purpose of attempting to retain custody of the child by naming petitioner as an appropriate safety resource. The court further concluded that petitioner's denial of domestic violence lacked credibility. We decline to disturb these determinations on appeal.

Petitioner also attacks the court's finding that his refusal to follow court orders contributed to its finding that he lacked credibility. According to petitioner, the only order he failed to follow was the order that he submit to an additional psychological evaluation. But petitioner ignores the portions of the adjudicatory hearing where he actively refused to comply with the court's simple direction that he identify his other children and their mothers. The record shows that the court ordered this at a prior hearing, petitioner failed to comply, and then he willfully refused to take this simple step after the court took a brief recess during the adjudicatory hearing for this express purpose. As such, this argument lacks a basis in the record and entitles petitioner to no relief. Petitioner also takes issue with the court's finding that he failed to manage his anger during the proceedings despite the benefit of previous anger management classes, but this argument also lacks a basis in the record. The court witnessed petitioner's conduct throughout the proceedings, including his calling the proceedings "ludicrous" and his argumentative nature when the court asked him to provide the names of his other children. Therefore, petitioner is entitled to no relief.

Petitioner spends a significant portion of his brief pointing to evidence that the mother's boyfriend perpetrated domestic violence upon her, but this argument is not compelling. The fact that the mother's boyfriend may have been violent does not mean that petitioner could not have also perpetrated domestic violence upon the same victim. As we have explained,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, we conclude that the DHHR presented sufficient evidence to support the circuit court's determination that petitioner abused and neglected the child by virtue of his perpetration of domestic violence.[7] *See* W. Va. Code § 49-1-201 (defining "abused child," in part, as "[a] child whose health or welfare is being harmed or threatened by: . . . Domestic violence).

---

[7]Petitioner also argues that it was error to adjudicate him for domestic violence, in part, by finding that he "argued involving raised voices and foul language." It is unnecessary to address this issue, however, because, as set forth above, the evidence supported the court's conclusion that petitioner perpetrated physical violence against the mother.

Finally, petitioner argues that there was a significant delay in the proceedings and that the court did not comply with the applicable timeframes for the holding of the adjudicatory hearing. While it is true that the adjudicatory hearing in this matter was held outside the applicable timeframe, petitioner fails to establish reversible error on this point in two critical ways. First, petitioner does not allege that he was prejudiced in any way by the delay. Second, and most important, is the fact that the record shows the delay in adjudication was caused, in large part, by petitioner. As set forth above, the matter was continued for several reasons, including the appointment of multiple attorneys for petitioner and his refusal to submit to at least one new psychological evaluation, which was crucial for the case to proceed. Because petitioner contributed to this delay and has not alleged any prejudice as a result, we find that he is entitled to no relief. Syl. Pt. 1, *Maples v. W. Va. Dep't of Commerce*, 197 W. Va. 318, 475 S.E.2d 410 (1996) ("A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.").

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 10, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: April 25, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn