# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **C.W.**

**No. 15-0278** (Wood County 14-JA-11, 14-JA-12, &14-JA-13)

**FILED**

November 23, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.S., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's February 25, 2015, order terminating his parental rights to C.W. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Angela Brunicardi-Doss, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in (1) adjudicating him an abusing parent because the DHHR failed to prove abuse or neglect by clear and convincing evidence; (2) in terminating his parental rights; (3) in amending its adjudicatory order; (4) and in denying his request for an improvement period.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2014, the DHHR filed a petition in the circuit court alleging that petitioner abused and neglected C.W. because of unexplained injuries and the inconsistent explanations for the injuries. The petition further alleged that the household was not safe for C.W. According to the petition, in December of 2013, petitioner and the mother, A.W., took C.W., born July 11, 2013, to the local emergency room. According to the mother, C.W. fell from a countertop while under the supervision of his maternal grandmother and sustained a skull fracture as a result of the fall. No other injuries were apparent and C.W. was released from the hospital into petitioner's and A.W.'s care. The treating physician advised petitioner and A.W. to watch for further symptoms or subsequent head injury. Thereafter, the mother was incarcerated at the regional jail

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

on unrelated criminal charges. Petitioner provided care for C.W. and the mother's other children, A.J. and I.J., during the mother's absence.[2]

In January of 2014, the mother was released from regional jail and returned home. Sometime after petitioner's return, C.W. displayed seizure-like symptoms. Petitioner initially told the mother that C.W. had fallen off the couch, but later stated that he had fallen with C.W. in his arms. The mother's friend called emergency services and an ambulance arrived shortly thereafter and transported C.W. to the hospital. At some point, Child Protective Services ("CPS") was notified of the circumstances and arrived to interview the family. The mother stated that petitioner told her that he fell with C.W. in his arms. Petitioner stated that he told the mother that C.W. rolled off the couch that morning. CPS interviewed the mother's aunt who stated that the mother called her that morning and reported that petitioner fell with C.W. and that the child was not "acting right." The mother later admitted that she called her aunt but she stated that she called her aunt much later in the day than her aunt reported to CPS and that she was unaware of C.W. having any further accidents or injuries when she was speaking to her aunt. CPS interviewed the mother's older children and they reported seeing petitioner shake C.W. because he could not wake the child. Petitioner and the mother failed to report any accidents that day to emergency medical personnel. C.W. was originally treated by a pediatric neurologist, Dr. Collins. C.W. was later transported to Ruby Memorial Hospital and a neuroradiologist, Dr. Hogg, found multiple subdural bleeds on C.W.'s brain.

In April of 2014, the circuit court held an initial adjudicatory hearing and a second adjudicatory hearing on June 06, 2014. The circuit court adjudicated petitioner of neglecting C.W. The circuit court found that petitioner failed to seek medical attention for, or notify medical professionals of, C.W.'s fall. The circuit court further found that petitioner did not initially report the incident to A.W. or to the paramedics and that petitioner provided different stories regarding how the injury occurred. A dispositional hearing was then scheduled for October of 2014.

In October of 2014, the circuit court held the dispositional hearing and amended its prior adjudicatory order to reflect a finding of abuse in addition to the neglect finding. The circuit court also gave leave to the DHHR to file an amended petition and advised petitioner that he was entitled to another adjudicatory hearing. In October of 2014, the DHHR filed an amended petition to reflect the testimony that C.W. had suffered four distinct head injuries in the first six months of his life that would have manifested symptoms. The amended petition reflected Dr. Hogg's opinion that C.W.'s injuries were suspicious for non-accidental trauma based upon the number of injuries and the inconsistent explanations of those injuries.

In November of 2014, the circuit court held an additional adjudicatory hearing to give petitioner and M.S. another opportunity to present evidence regarding adjudication. Petitioner and M.S. offered the testimony of Dr. Collins. The circuit court noted that Dr. Collins' testimony supported Dr. Hogg's testimony that C.W. had an unexplained injury prior to the December of 2013 incident where petitioner reported that C.W. fell off the kitchen counter. Based on the

---

[2]Although they were included in the petition below, petitioner raises no assignments of error regarding children A.J. and I.J. on appeal. As such, these children are not the subject of the appeal.

expert testimony, the circuit court found that there was an initial undisclosed and unexplained significant non-accidental head trauma to C.W. The circuit court further found that C.W. suffered prior subdural bleeds that were the result of non-accidental trauma, and that neither petitioner nor M.S. ever reported such prior injuries. The circuit court adopted the findings of the amended adjudicatory order and made additional findings supported by the expert testimony. Petitioner and M.S. filed motions to strike the amended adjudicatory order and amended petition which were denied. The final adjudication order was entered on February 4, 2015. Subsequent to the entry of the final adjudication order, the DHHR filed a motion to terminate petitioner's parental rights and petitioner and M.S. filed motions for improvement periods.

In February of 2015, the circuit court held a final dispositional hearing wherein it addressed the DHHR's motion to terminate petitioner's parental rights and petitioner's and the mother's motions for improvement periods. At the conclusion of the hearing, the circuit court found that the multiple, unexplained injuries to C.W. precluded it from granting an improvement period and supported termination of the parties' parental rights. Ultimately, the circuit court terminated petitioner's parental rights. The final dispositional order was entered on February 25, 2015. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of petitioner as an abusing parent, in terminating his parental rights, or in its amendment of the adjudicatory order.

First, petitioner assigns error to the circuit court adjudication of him an abusing parent. An abused child is one whose "health or welfare is harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." W.Va. Code § 49-1-3(1)(A) (2012). We have explained that

> "W.Va. Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to

prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). While petitioner claims the DHHR failed to prove abuse or neglect by clear and convincing evidence, the record on appeal demonstrates that petitioner and the mother were the primary caregivers for C.W. Expert testimony established that C.W. suffered four distinct head injuries in the first six months of his life.[3] Evidence established that petitioner and the mother were both providing care for C.W. at that time and on a regular basis. Further, expert testimony established that such injuries would have manifested symptoms observable to petitioner and the mother. Based upon the number of injuries and the inconsistencies in the explanations of those injuries, the experts testified that C.W.'s injuries resulted from non-accidental trauma. According to the record, petitioner failed to seek medical attention for, or notify medical professionals of, C.W.'s fall. Petitioner did not initially report the incident to the mother or medical professionals and he provided conflicting stories on how the incident occurred. The evidence established that petitioner shook C.W. because he could not awaken the child. Further, petitioner reported that C.W. had no injuries or symptoms prior to his December of 2013 skull fracture. However, that report was inconsistent with the medical testimony.

Based upon the record on appeal, the circuit court found that there was an initial undisclosed and unexplained significant non-accidental head trauma to C.W. The circuit court further found that C.W. suffered prior subdural bleeds that were the result of non-accidental trauma and that the parents made no reports of prior injuries. Thus, the record on appeal supports the circuit court's finding that there was clear and convincing evidence that C.W. suffered extensive physical abuse while in petitioner's custody, that petitioner did not report or acknowledge this abuse, and that petitioner took no action to identify C.W.'s abuser. As such, the circuit court did not err in adjudicating petitioner as an abusing parent.

Further, the Court finds that the circuit court properly terminated petitioner's parental rights upon a finding that he could not substantially correct the conditions of abuse and neglect in the home. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and when necessary for the child's welfare. We have held as follows:

> "[p]arental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the

---

[3]Both Dr. Collins and Dr. Hogg ultimately agreed and testified that the subdural bleeds were likely caused by a shaken type of rotational injury to C.W. at three months of age.

abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser."

Syl. Pt. 3 *In re: Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). The circuit court was presented with evidence that, while in petitioner's care, C.W. suffered subdural bleeds that were the result of non-accidental trauma. Petitioner failed to seek medical attention for, or notify medical professionals of C.W.'s fall; did not initially report the incident to A.W. or medical professionals; and provided different stories on how the incident occurred. For these reasons, termination of petitioner's parental rights to the child was not error.

Next, petitioner assigns error to the circuit court's denial of his motion for an improvement period. We have explained that West Virginia Code § 49-6-12(a) grants circuit courts discretion in determining whether to permit improvement periods in abuse and neglect proceedings. West Virginia Code § 49-6-12(b)(2) requires a parent to prove by clear and convincing evidence that he or she is likely to fully participate in the same. However, we have been clear that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). We have also held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 1, in part, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Although petitioner argues that the circuit court erred because he was willing to fully cooperate and comply with the terms of an improvement period, we find no error in the circuit court's denial of his motion for an improvement period.

The record on appeal supports that the circuit court's denial of petitioner's request for an improvement period. "Failure to acknowledge the existence of the problem, i.e. the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *W. Va. Dep't of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996). Petitioner failed to provide any acknowledgement or explanation for C.W.'s serious head injuries, other than inconsistent stories regarding how C.W.'s injuries occurred. By refusing to acknowledge the abuse, petitioner demonstrated his unwillingness to address the issues that led to C.W.'s physical abuse, thereby rendering an improvement period meaningless. Petitioner specifically denied abusing C.W. and denied any knowledge of abuse to C.W. Based on the foregoing evidence, we find that the circuit court did not err in denying petitioner's request for an improvement period.

Petitioner's third assignment of error is that the circuit court erred in amending its adjudicatory order to reopen the abuse and neglect proceedings. Although petitioner argues that Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings governs the circuit court's actions, this rule is applicable to modifications that are due to material changes in circumstances and not to the circuit court's own correction of a previously entered order. Therefore, petitioner's improper application of Rule 46 does not preclude the circuit court's amendment of its order, sua sponte, to correct its own findings. The circuit court noted that the change in its order was not based upon new evidence but was based upon the circuit

court's clearer understanding of the evidence after further review. Although the initial DHHR petition did not specifically allege that C.W. suffered subdural brain bleeds, it did make allegations as to C.W.'s unexplained injuries. Moreover, the circuit court scheduled the matter for subsequent adjudicatory hearings and petitioner was given ample opportunity to present any additional evidence he wished to offer. Given the complicated nature of the medical testimony in this case, we find that the amendment of the circuit court's order was in accordance with Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.

Petitioner further argues that the circuit court's amendment of its adjudicatory order did not comply with Rule 19. Again, we disagree. Rule 19 provides that a petition must be amended prior to the final adjudicatory hearing. The requirements of Rule 19 were satisfied by the two additional adjudicatory hearings held by the circuit court regarding the amended petition. Thus, petitioner was granted an additional opportunity to present evidence on the issue of abuse, in compliance with Rule 19. As such, the amendment of the circuit court's order was in accordance with Rule 19.

For the foregoing reasons, we find no error in the decision of the circuit court and its February 25, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6