# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: A.M.

No. 17-0098 (Wood County 15-JA-28)

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.T., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's January 4, 2017, order terminating his parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed individual replies to each respondent's brief. On appeal, petitioner argues that the circuit court erred in adjudicating him of neglecting the child upon insufficient evidence.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, the DHHR filed an abuse and neglect petition that alleged the mother was of limited intellectual capacity and was unable to provide safe, proper care for the child. The petition further alleged that the mother and her live-in boyfriend exposed the child to domestic violence. The initial petition did not contain any allegations against A.M.'s father, petitioner herein. However, the DHHR filed an amended petition to include allegations against petitioner in October of 2015. The amended petition alleged that petitioner failed to provide the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

child with safe and adequate shelter and that he had a history of failing to provide safe shelter in relation to older children.[3] Specifically, the DHHR indicated that it offered petitioner services to address issues of adequate shelter, in addition to parenting and adult life skills services, in 2008, 2012, and 2013. The DHHR further alleged that the most recent services were terminated due to petitioner moving to the State of Ohio.

During an adjudicatory hearing in February of 2016, petitioner testified that he was evicted from his dwelling in Canton, Ohio, for nonpayment of rent. The circuit court also heard evidence that, prior to his eviction, petitioner's residence was in deplorable condition due to falling walls, broken windows, an infestation of bed bugs, leaking ceilings, a lack of hot water, and trash on the floors throughout the home. Following his eviction, petitioner moved between other people's dwellings in the State of Ohio. First, petitioner and his older children lived with his older children's grandfather until they were asked to leave. Thereafter, petitioner, his older children, the older children's mother, and the mother's husband moved into a home with a friend and her two daughters. Petitioner testified that his only form of income was Social Security. As such, the circuit court adjudicated petitioner of neglecting the child due to his failure to provide a suitable residence. Moreover, during the proceedings, visitation between petitioner and the child was cancelled after petitioner missed three consecutive visits. Thereafter, the circuit court reinstated visitation, but petitioner continued to miss visits.

In June of 2016, the circuit court held a dispositional hearing. Petitioner failed to appear, but was represented by counsel, who requested a continuance. The circuit court granted the request, but directed that petitioner provide verification of his housing so that the DHHR could perform a home study. The circuit court held the continued dispositional hearing on September 9, 2016, and petitioner again failed to appear. Petitioner's counsel submitted a lease agreement from petitioner to verify his housing, but counsel admitted that the document was illegible. Moreover, the DHHR argued that the document was received well after the circuit court's deadline for establishing a suitable residence and, therefore, it was too late to perform a home study. The circuit court, however, allowed petitioner additional time to demonstrate his compliance. Ultimately, the circuit held the final dispositional hearing in December of 2016. Petitioner again failed to appear, but was represented by counsel. The circuit court found there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of his parental rights was necessary for the child's wellbeing. As such, the circuit court terminated petitioner's parental rights.[4] It is from this order that petitioner appeals.

---

[3]It appears from the record that petitioner's three older children were not the subject of the instant abuse and neglect petition because the older children and their parents lived in the State of Ohio. Additionally, it appears that at least one of petitioner's three older children is eighteen years old.

[4]The parental rights of both parents to child A.M. were terminated below. According to the DHHR, child A.M. is currently placed in a foster home with a permanency plan of adoption therein.

2

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of the child as neglected.

On appeal, petitioner argues that adjudication below was improper because he never actively neglected the child and his failure to obtain appropriate shelter was based entirely on his lack of financial means.[5] We do not agree. First, petitioner's argument that he never actively neglected A.M. is without merit. West Virginia Code § 49-1-3, in relevant part, defines a neglected child as one

> "[w]hose physical or mental health is harmed *or threatened* by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, *shelter*, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent . . . ."

(Emphasis added). Petitioner's argument on appeal ignores the fact that the child's health was threatened by his failure to provide her with necessary and appropriate shelter.

According to petitioner, the child never lived in the residence in question and, moreover, by the time the amended petition was filed, the child was being adequately cared for by the

---

[5]Petitioner additionally argues that the circuit court based adjudication, in part, upon a finding that A.M. was neglected because the older children in petitioner's home were neglected. While it is true that the circuit court undertook a detailed recitation of the conditions in petitioner's home where these older children lived, the record is devoid of the circuit court making a finding of abuse or neglect as to petitioner's older children, as they were not the subject of these proceedings. It is clear that the circuit court's findings at adjudication concerned only petitioner's neglect of A.M., the child at issue. Accordingly, we decline to address petitioner's argument that adjudication was in error because it was based in any way on findings of abuse or neglect to children that were not the subject of these proceedings.

DHHR. As such, petitioner argues that the child's physical and mental health were never harmed nor threatened. This argument, however, ignores the definition of neglected child cited above. While it is true that the DHHR assumed custody of the child, it did so pursuant to a petition for emergency custody following an abuse and neglect petition against the child's mother. At the time the child was removed from the mother's care, it is clear that petitioner was unable to provide her with a safe, suitable home. Accordingly, the child's physical and mental health was threatened by petitioner's inability to provide the child with a safe, suitable home, and it was his inability to provide the same that necessitated the child's placement into the DHHR's custody.

We have previously held that

"W.Va.Code, 49-6-2(c), requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). The record in this matter is clear that the DHHR established that, as of the amended petition's filing, petitioner's home was unfit for the child. Moreover, by the time of the adjudicatory hearing, petitioner lacked a residence entirely and was living in a home with approximately eight other individuals. Thereafter, petitioner failed to provide any information regarding his living arrangement so that the DHHR could conduct a home study to determine if the child could be returned to petitioner's care. As such, we find that the DHHR met its burden at adjudication by establishing that petitioner's neglect constituted a threat to the child's health.

Finally, the Court finds no merit to petitioner's argument that his failure to obtain suitable housing was based entirely upon his lack of financial means. In support of this argument, petitioner alleges that his sole source of income came from Social Security benefits. However, the Court finds that this is inadequate to establish that petitioner's inability to provide the child with safe, suitable housing was primarily due to his lack of financial means. Petitioner cites to no portion of the record wherein it was established exactly what petitioner's income was or how such income was insufficient to obtain suitable housing. Instead, petitioner relies on his own self-serving testimony, wherein he alleges that the cost of travelling to West Virginia for these proceedings resulted in his inability to pay rent and his subsequent eviction. However, there is simply no evidence to support this testimony. Petitioner did not disclose the total amount of his monthly Social Security benefits or how those benefits were insufficient to cover suitable housing for the child. On the contrary, the DHHR provided evidence that petitioner's lack of a suitable home was a result of his willful decisions to live in such conditions and a general lack of insight into how these conditions constitute neglect. Specifically, the DHHR established that petitioner had ongoing issues with housing dating back to 2008 and that the same persisted

4

through the current matter, despite services designed to remedy these conditions. Accordingly, we find no error in the circuit court's adjudication of the child as neglected.[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 4, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 9, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[6]On appeal, petitioner additionally argues that the circuit court's termination of his parental rights was improper and that the dispositional order should be vacated. This argument is predicated entirely on his assertion that adjudication was improper. In fact, the totality of petitioner's argument in support of this assertion is that "[s]ince the lower court erred in finding that [he] neglected A.M., it was inappropriate to terminate [his] parental rights." Because we find no error in the circuit court's adjudication, we similarly find no error in the circuit court proceeding to termination of petitioner's parental rights.