# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: S.S.

No. 17-0330 (Randolph County 16-JA-93)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father G.L., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's March 3, 2017, order terminating his parental rights to S.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) finding probable cause to support the emergency removal of the child from the home; (2) adjudicating him of neglect upon insufficient evidence; and (3) denying his motion for either a post-adjudicatory or post-dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a prior abuse and neglect proceeding in which he successfully completed an improvement period, petitioner was reunited with the child in May of 2016. According to the record, the prior proceeding was based, in part, on allegations that petitioner lacked adequate housing. At the time, petitioner lived with his parents. According to the DHHR, petitioner was repeatedly warned that the child's paternal grandparents' home was inappropriate, especially in light of the later removal of petitioner's nieces and nephews from that home due to unsafe conditions. Following reunification with petitioner, the prior petition was dismissed.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner does not raise a specific assignment of error regarding the circuit court's termination of parental rights.

1

In September of 2016, petitioner's mother contacted the DHHR and asked if the child could reside in her home for two weeks while petitioner moved. Despite the DHHR employee indicating that this would not be appropriate, petitioner nonetheless left the child at the grandparents' home around October 3, 2016, before leaving for the Commonwealth of Virginia. The following day, the DHHR received a referral that the child was staying at the grandparents' home. The DHHR initiated an investigation and found the home to be "in a filthy and unsafe condition" due to missing windows, a missing door, and food debris and garbage filling the home. The worker also noted a strong odor in the home which was also present on the child's person. Further, the child was found to have dirt caked under her nails and in the creases of her skin. As such, the DHHR removed the child from the home.

On October 11, 2016, the DHHR filed an abuse and neglect petition against petitioner based on the conditions of the home in which he left the child. The petition further alleged that the paternal grandfather was charged with domestic violence against the paternal grandmother in June of 2016 after an incident that took place in petitioner's home in the child's presence. That same month, the circuit court held a preliminary hearing and found that petitioner subjected the child to imminent danger by placing her in a home he knew to be unsafe.

In December of 2016, the circuit court held an adjudicatory hearing, during which the DHHR presented testimony from three workers who testified that the grandparents' home was chronically unfit. The DHHR also presented evidence from petitioner's sister's mother-in-law, who similarly spoke to the unfit nature of the home. Petitioner presented no evidence or testimony in response to the DHHR's evidence. The circuit court then adjudicated petitioner of neglecting the child, based upon his failure to acknowledge the unsafe conditions in his parents' home. The following month, petitioner filed a motion for either a post-adjudicatory or a post-dispositional improvement period, while the DHHR filed a motion to terminate petitioner's parental rights.

In January of 2017, the circuit court held a dispositional hearing and addressed both outstanding motions. In support of his motion for an improvement period, petitioner testified that his parents' home was not in an unsafe condition when he left the child there. Petitioner further disagreed with the testimony of the DHHR workers regarding the home's condition. Petitioner additionally acknowledged that he was previously warned on multiple occasions that the home in question was not suitable for the child. Ultimately, the circuit court found that petitioner failed to accept responsibility for his actions. The circuit court further found that, based upon the extensive services petitioner received in the prior proceeding, there were no additional services that could remedy the conditions and neglect. As such, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights to the child. [3] It is from the dispositional order that petitioner appeals.

---

[3]The child's mother voluntarily relinquished her parental rights to the child in a prior abuse and neglect proceeding. According to the parties, the child is placed in a foster home with a goal of adoption therein.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, we find no error in the circuit court's finding of imminent danger to the child such that removal from the home was warranted. Pursuant to West Virginia Code 49-4-303,

> [p]rior to the filing of a petition, a child protective service worker may take the child or children into his or her custody (also known as removing the child) without a court order when:
>
> (1) In the presence of a child protective service worker a child or children are in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children, as that phrase is defined in section two hundred one, article one of this chapter; and
>
> (2) The worker has probable cause to believe that the child or children will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

Pursuant to West Virginia Code § 49-1-201,

> "Imminent danger to the physical well-being of the child" means an emergency situation in which the welfare or the life of the child is threatened. These conditions may include an emergency situation when there is reasonable cause to believe that any child in the home is or has been sexually abused or sexually exploited, or reasonable cause to believe that the following conditions threaten the health, life, or safety of any child in the home: . . . *Any other condition that threatens the health, life, or safety of any child in the home.*

(emphasis added). The record here is clear that the child was removed from the home upon probable cause that the conditions in the grandparents' home, including improper supervision, the unsuitable nature of the home itself, and the recent domestic violence incident between the grandparents, resulted in conditions that threatened the health, life, and safety of the child.

Petitioner bases his argument in support of this assignment of error upon several factors, including his disagreement with the DHHR employees' description of the home, the fact that the child had only been in the home for twenty-four hours, the fact that the child did not suffer any actual injury in the home, and an allegation that the DHHR did not provide reasonable efforts to prevent removal from the home. These arguments are unpersuasive. First, the record is clear that the condition of the home was indisputably unfit for the child. While petitioner argues that the descriptions of the home were insufficient, one DHHR employee testified that "[a]t one point in the hallway the garbage and the dirty clothes came to my knees." This worker also testified that the stench of the home, coupled with other factors, rendered the residence unlivable for a child. In fact, the worker testified that the residence's odor was detectable on the child and the dirt covering her required the DHHR worker to clean the child upon removal. Most importantly, however, is the fact that the DHHR worker testified that these same conditions formed a basis of petitioner's prior abuse and neglect proceeding and that he had been warned numerous times that the home was unfit for the child. This evidence alone was sufficient to establish that the child's wellbeing was in imminent danger. Further, the circuit court also heard evidence regarding the grandparents' inability to properly supervise the child and the fact that petitioner was aware they had recently been involved in a domestic altercation in which the grandfather pinned the grandmother down and was overheard by law enforcement telling her that he was "going to paralyze [her] . . . ." As such, it is irrelevant that the child had only been in the home for a short period and did not suffer any actual injury. The fact remains that petitioner was aware of the unsuitable nature of the home and left the child there regardless. For these reasons, we find no error in the circuit court's finding of imminent danger to the child.

Further, we find no error in the circuit court's finding that the DHHR previously provided remedial efforts to petitioner to prevent removal from the home and that, due to emergency circumstances, it was reasonable for the DHHR to remove the child from the home without making further efforts to prevent removal. Petitioner is correct that West Virginia Code § 49-4-602(d) sets forth situations in which reasonable efforts to preserve the family are not required. However, petitioner's argument that none of these situations applied to the current matter is unpersuasive given that the record shows that the circuit court did not find that the DHHR was exempt from making such efforts. On the contrary, the circuit court found that, aside from the services petitioner received in his recent abuse and neglect proceeding, it was reasonable for the DHHR to remove the child without making further efforts to prevent such removal. We agree. The specific circumstances of this particular case presented the DHHR with no choice but to remove the child, given that she was left in an unsuitable home while petitioner traveled outside the State. Because the DHHR had no choice but to remove the child from the home, we find no error.

4

Next, petitioner argues that the circuit court erred in adjudicating him as an abusing parent.[4] In support of this assignment of error, petitioner argues that the evidence was insufficient to support his adjudication and again disputes the DHHR's characterization of the home in question. Petitioner further argues that the DHHR's failure to remove his nieces and nephews from the grandparents' home after the DHHR's initial visit in the prior cases negates its allegation that the home was unsuitable. We do not agree. Importantly, those cases are not properly before this Court for review and have little bearing on our decision herein, given that the Court does not have a record of those proceedings. However, petitioner's argument also ignores the fact that, according to the circuit court's adjudicatory order in this proceeding, the children petitioner addresses were removed from the subject home in August of 2016 "because the home was inappropriate and these children were not being closely supervised." Additionally, the circuit court found that testimony concerning the removal of these additional children from the home established that it was in deplorable condition due to the presence of "flies too numerous to count, soiled food, . . . [and a] terrible odor," among other issues. Simply put, petitioner's arguments that the DHHR's actions across various abuse and neglect proceedings do not support his adjudication in this proceeding are without merit.

Moreover, the Court finds that the evidence upon which the circuit court relied was sufficient. In addressing the burden of proof at adjudication, we have held as follows:

> "W.Va.Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, petitioner argues that the DHHR failed to meet its burden of proof because it did not provide any corroboration that the home was in the condition to which the employees testified. According to petitioner, the DHHR's failure to provide photographic evidence or other contemporaneous notes about the visits to the home resulted in insufficient evidence. We do not agree. The record is clear that several individuals testified consistently about the conditions in the home. This included not only DHHR personnel, but also petitioner's sister's mother-in-law, who visited the home multiple times over the preceding five years. While petitioner argues that her testimony was irrelevant because she was last in the home in August of 2016, the Court does not agree. When taken together with the testimony of the DHHR employees, this testimony clearly shows a

---

[4]The circuit court actually adjudicated petitioner as an "abusive and neglectful parent." However, West Virginia Code § 49-1-201 defines "abusing parent" as " a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse or neglect." (emphasis added). Because the statutory definition of "abusing parent' encompasses a parent who has been adjudicated of abuse or neglect, we will use the correct statutory term throughout this memorandum decision.

pattern of unsuitability in the grandparents' home. Additionally, this testimony further bolsters the circuit court's findings regarding the fact that petitioner was repeatedly warned that the grandparents' home was unsuitable for the child and that the home remained in such a condition.

> According to West Virginia Code § 49-1-201, a "neglected child" is one
>
> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian . . . .

Here, the record overwhelmingly established that the child was neglected, as petitioner failed to provide her with proper shelter and supervision, among other issues. The record shows that the home in question was not only unsuitable for the child, but that petitioner was aware of the recent domestic violence between the grandparents. While petitioner argues on appeal that the alleged neglect in this case was a direct result of a lack of financial means, he provides no evidence in support of this allegation. Simply put, petitioner has failed to show how the parties' alleged lack of finances resulted in an inability to keep the home free of trash, spoiled food, and other potentially harmful material. Accordingly, we find no error in adjudication below.

Finally, petitioner argues that the circuit court erred in denying his motion for either a post-adjudicatory or post-dispositional improvement period. In support of this assignment of error, petitioner argues that the circuit court erred in finding that he failed to acknowledge the existence of the conditions that necessitated the petition's filing and that he failed to accept responsibility for the same. According to petitioner, the circuit court erroneously accepted the DHHR's argument that, because he challenged the preliminary hearing and adjudication, petitioner continued to refuse to accept responsibility through disposition. Petitioner cites to portions of the dispositional transcript wherein he claims that he fully acknowledged the conditions of neglect present in the matter and indicated his desire to correct the same. However, we do not find petitioner's argument persuasive, as it ignores important portions of the dispositional hearing wherein petitioner illustrated his continued failure to acknowledge the conditions that gave rise to the matter.

Specifically, the circuit court found that "at disposition, [petitioner] still doesn't fully accept responsibility for his actions, blaming it on poor judgment, and only testified that he shouldn't have taken his daughter to that home because 'the State is always right.'" Further, the circuit court found that petitioner testified at the dispositional hearing that "the condition of the home was appropriate, despite the testimony of three . . . CPS workers to the contrary." In short, the circuit court found that petitioner "took his daughter to this home, after being repeatedly warned not to, . . . within 30 days of his return of custody, and after 11 months of services in his previous improvement period . . . ." Based upon these findings, the circuit court held that petitioner's failure to acknowledge the conditions of neglect prevented him from obtaining an improvement period. This is in keeping with our prior holdings, wherein we have stated that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Simply put, petitioner's failure to acknowledge the conditions of neglect resulted in his inability to establish that he was likely to fully participate in an improvement period, as required by West Virginia Code §§ 49-4-610(2)(B) and (3)(B). As such, we find no error in the circuit court's denial of petitioner's motion for either a post-adjudicatory or a post-dispositional improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 3, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker