**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.G.**

**No. 25-313** (Wood County CC-54-2024-JA-221)

## MEMORANDUM DECISION

Petitioner Mother C.V.[1] appeals the Circuit Court of Wood County's April 16, 2025, order terminating her parental rights to A.G., arguing that the court erred in adjudicating her for exposing the child to domestic violence, denying her an improvement period, and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2024, the DHS filed a petition alleging that the petitioner abused and neglected the child by virtue of her substance abuse, untreated mental illness (as the petitioner admitted to no longer taking her prescribed mental health medication), and exposure to domestic violence. Further, the DHS alleged that the petitioner's parental rights to two older children had previously been involuntarily terminated due to her substance abuse and that A.G. had been the subject of a prior abuse and neglect proceeding where the petitioner was adjudicated for her continued substance abuse but ultimately regained custody of the child. However, the DHS alleged that the petitioner's substance abuse issues persisted as she tested positive for methamphetamine and amphetamine.

At the first adjudicatory hearing in November 2024, the DHS entered into evidence records from two domestic violence proceedings concerning the petitioner and her boyfriend, C.G., both of which were dismissed when the petitioner failed to appear for hearings. The DHS presented testimony from a Child Protective Services ("CPS") worker, who explained that a domestic violence incident occurred at the petitioner's home within days of the petition's filing when C.G. "attempted to kick down the door"; the petitioner admitted that A.G. was recently in the home "when there was another altercation" and that she had sent the child to another home because "she didn't want [the child] . . . in that situation"; and the petitioner acknowledged that C.G., with whom she claimed to have broken up, stalked her and was banned from the property. According to the

---

[1] The petitioner appears by counsel Susan M.P. Karr. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Katrina M. Christ appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

worker, the petitioner also admitted to a history of domestic violence perpetrated by C.G. that occurred in the child's presence and claimed that her positive drug screen was the result of C.G. drugging her. The worker further testified that the petitioner confirmed that she was no longer taking medication to treat her mental health because "she didn't feel like she needed them anymore since she completed that improvement period" in the prior case.

At the continued adjudicatory hearing in December 2024, the petitioner's mother testified that the petitioner was diagnosed with bipolar disorder as a teenager but was not taking any medication. She also testified to the petitioner's relationship with C.G. and her history of substance abuse that resulted in the termination of her parental rights to two older children. Next, a law enforcement officer testified to the incident in which C.G. tried to gain access to the petitioner's home. Then, the petitioner testified to her history of abuse and neglect proceedings and her relationship with C.G., whom she claimed she was no longer dating. Despite her claim that they ended their relationship several months prior to the proceedings and that he had stalked her during this period, the petitioner later admitted that she had sex with C.G. roughly one week prior to the petition's filing. The petitioner acknowledged that she had a history of returning to the abusive relationship despite "explosive" incidents, although she claimed that the only time C.G. committed domestic violence was when he shoved her several months prior to the proceedings. The petitioner also clarified that she continued to permit C.G. to see the child even after she ended the relationship because C.G. viewed the child as his own despite not being the biological father. The petitioner also claimed that she failed her initial drug screen because C.G. "could've put something in [her] food or . . . drink." Further, the petitioner admitted that she was not taking her prescription medications for mental health issues, which she claimed were for anxiety and trouble sleeping. The petitioner denied a bipolar diagnosis. Ultimately, the circuit court concluded that the petitioner had not changed her circumstances since the prior termination, which constituted aggravated circumstances; abused substances to the point that her parenting skills were impaired; had untreated mental health issues that impaired her parenting; and exposed the child to domestic violence. Accordingly, the court found that the petitioner abused and neglected the child. Following this hearing, the petitioner filed a motion for an improvement period. Conversely, the DHS filed a report noting that the petitioner had again tested positive for methamphetamine and cancelled several visits with the child.

At the final dispositional hearing in February 2025, the petitioner testified in support of her motion. Despite recognizing her noncompliance with drug screens as ordered, the petitioner claimed she would comply if granted an improvement period. The petitioner also claimed that she had undergone an initial intake for therapy, was diagnosed with bipolar disorder, and began taking medication the week prior to the hearing. In that week, the petitioner realized she made bad choices, especially in her relationship with C.G. The petitioner then claimed that she had not had contact with C.G. since the petition's filing. The DHS further addressed the petitioner's failure to drug screen as directed, including instances where she failed to screen following hearings. A CPS worker testified to the petitioner's noncompliance during the proceedings, explaining that the petitioner provided a variety of excuses for her lack of effort. The CPS worker testified that the petitioner had not changed her circumstances and that she was concerned that the petitioner's relationship with C.G. was still ongoing based on social media posts that contradicted the petitioner's claims that the relationship ended and that she had not seen C.G. since the beginning of the case.

2

Ultimately, the circuit court denied the petitioner's motion for an improvement period, noting that she had not submitted to ordered drug screens in two months, had previously participated in improvement periods and services to no avail, and failed to properly manage her ongoing mental health issues. Turning to disposition, the court cited these same factors in concluding that the petitioner "has shown little inclination to change" and highlighted her limited efforts to address her issues at the last possible opportunity. Accordingly, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and, citing the need for continuity in care and caretakers, that the child's welfare required termination. As such, the court terminated the petitioner's parental rights to the child.[3] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, -- S.E.2d --, 2026 WL 1362143 (W. Va. May 15, 2026). Before this Court, the petitioner first argues that it was error to adjudicate her for exposing the child to domestic violence[4] because she testified that the child only witnessed one incident of domestic violence several months prior to the petition's filing. As such, the petitioner asserts that this was not a "condition[] existing at the time of the filing of the petition" as required by West Virginia Code § 49-4-601(i). We do not agree, as the record demonstrates that the petitioner and C.G. had an extensive history of domestic violence that threatened the child at the time the DHS filed its petition. As we have explained, "[West Virginia Code § 49-4-601(i)], requires the [DHS] . . . to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence],'" but that it "does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." Syl. Pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (quoting Syl. Pt. 1, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)). In advancing her argument, the petitioner asks this Court to rely solely on her testimony and completely disregard other evidence that the child was at home when another incident occurred just days before the petition was filed and that the petitioner failed to secure domestic violence protective orders against C.G. We decline to do so, as the circuit court is the entity tasked with addressing witness credibility and weighing evidence. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). While it is true that one incident the child witnessed was remote, it is clear that the domestic violence between the petitioner and C.G. was ongoing and constituted a threat to A.G. at the time the petition was filed, especially considering the petitioner's admitted continued exposure of the child to C.G. *See* W. Va. Code § 49-1-201 (defining "abused child," in relevant part, to include a child who is *threatened* by domestic violence). As such, the court did not err in adjudicating the petitioner on this basis.

---

[3] According to respondents, the father has expressed a desire to voluntarily relinquish his parental rights. The permanency plan for the child is adoption in the current placement.

[4] The petitioner raises no challenge to her adjudication on any other basis.

3

Next, the petitioner argues that the circuit court erred in denying her motion for an improvement period because she was participating in therapy, taking her prescribed medication, and had legitimate excuses for missing drug screens due to a lack of transportation. However, we note that, because the petitioner's parental rights to older children were previously involuntarily terminated, this case was one of aggravated circumstances that absolved the DHS of making reasonable efforts to preserve the family. *See* W. Va. Code § 49-4-604(c)(7)(C) ("For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the [DHS] is not required to make reasonable efforts to preserve the family if the court determines: . . . The parental rights of the parent to another child have been terminated involuntarily[.]"). Further, while it is true that the petitioner made some effort to address the issues of abuse and neglect, the circuit court found that she waited until the last minute to make these attempts and that they were insufficient, especially in light of the extensive services she received in her prior abuse and neglect proceedings. Critically, the evidence also contradicted the petitioner's claim that she ended her relationship with C.G., which demonstrated that he remained a threat to the child's welfare. As we have explained, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). We find no abuse of that discretion here.

Finally, the petitioner argues that the circuit court erred in terminating her parental rights as this was not the least restrictive dispositional alternative. However, the petitioner ignores the fact that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Here, substantial evidence supports the court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. As outlined in detail above, the court relied on the same evidence in support of the denial of an improvement period. Indeed, the petitioner's extensive history of substance abuse, relapses after treatment, and minimal efforts in this proceeding "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected"). The court similarly found that the child's welfare required termination, a finding the petitioner does not challenge on appeal. *See id.* § 49-4-604(c)(6) (permitting termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"). Accordingly, the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, the circuit court's April 16, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2026

4

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan